HAMLIN, Justice ad hoc.
Defendant appeals from a judgment of the trial court ordering him to refund to plaintiff gas gathering taxes paid under protest.
The stipulated facts of record disclose that plaintiff is a natural gas company authorized to do business in Louisiana, and that it holds a certificate of convenience and necessity issued by the Federal Power Commission, which authorizes it to transmit and sell, in interstate commerce, gas received into its pipelines. Its main pipeline, 8 in., originates near the plant of Cotton Valley Operators’ Committee in Webster Parish, Louisiana, and terminates at Okay, Howard County, Arkansas, and its pipeline, 6 in., originating in the Haynesville Area of Claiborne Parish, Louisiana, joins the main pipeline south of Springhill in Webster Parish, Louisiana. Plaintiff does not produce any gas. It purchases gas in Louisiana from three leases in the Haynesville Area and from the plant of Cotton Valley Operators’ Committee.
The gas from the Haynesville Area was taken after it had passed through plaintiff’s vendor’s separator and into plaintiff’s meter. No liquid hydrocarbons were separated from this gas. The gas from the Cotton Valley Area was residue gas taken after plaintiff’s vendor had removed liquid hydrocarbons in commercial quantities. Water and impurities were removed after the gas had entered plaintiff’s dehydration units. Title to the gas passed to plaintiff as it entered plaintiff’s metering equipment near the gasoline plant.
This litigation involves the gas plaintiff . purchased from the Cotton Valley Field and sold to markets in Arkansas.
The Collector of Revenue was of the opinion that since the tax event occurred prior to the interstate movement of the gas, plaintiff’s gathering of gas was a separate local business susceptible of taxation by the State. In paying the assessed taxes of $10,269.81, the plaintiff urged that the imposition was upon the taking of gas into interstate commerce, and it instituted the present suit for a refund.
The trial judge held that the Louisiana Gas Gathering Tax, LSA-R.S. 47:671 et seq., as assessed against plaintiff, infringed upon the Commerce Clause of the Federal *603 Constitution, Article I, Sec. 8, Clause 3. In so holding, he relied on the cases of Michigan-Wisconsin Pipe Line Co. v. Calvert (Panhandle Eastern Pipe Line Co. v. Calvert), 347 U.S. 157, 74 S.Ct. 396, 98 L.Ed. 583, and United Fuel Gas Company v. Hallanan, 257 U.S. 277, 42 S.Ct. 105, 66 L.Ed. 234.
In the case of Michigan-Wisconsin Pipe Line Co. v. Calvert, supra (the latest expression of the United States Supreme Court on a tax as herein involved) there was under consideration a Texas statute, Acts 1951, c. 402, similar to the one attacked in the instant case. There the appellants, two natural gas pipeline companies, purchased gas from Phillips Petroleum in Texas and shipped it through their own pipelines in interstate commerce without the State of Texas. Phillips installed gas meters in its pipes at the point where the gas flowed to appellants’ pipes. The State of Texas sought to impose a gas gathering tax, contending that the taking was the taxable incidence. The United States Supreme Court found the entire movement of the gas — from producing wells, through the Phillips gasoline plant, into the Michigan-Wisconsin pipelines, to consumers outside Texas — to be a steady and continuous flow. In disallowing the tax as being in violation of the Commerce Clause, it stated:
“ * * * It is now well settled that a tax imposed on a local activity related to interstate commerce is valid if, and only if, the local activity is not such an integral part of the interstate process, the flow of commerce, that it cannot realistically be separated from it. Memphis Natural Gas Co. v. Stone, 1948, 335 U.S. 80, 87, 68 S.Ct. 1475, 1478, 92 L.Ed. 1832, [1838]; Western Live Stock v. Bureau of Revenue, supra, 303 U.S. [250] at page 258, 58 S. Ct. [546] at page 550 [82 L.Ed. 823]. And if a genuine separation of the taxed local activity from the interstate process is impossible, it is more likely that other states through which the commerce passes or into which it flows can with equal right impose a similar levy on the goods, with the net effect of prejudicing or unduly burdening commerce.
“The problem in this case is not whether the State could tax the actual gathering of all gas whether transmitted in interstate commerce or not, cf. Hope Natural Gas Co. v. Hall, [274 U.S. 284, 47 S.Ct. 639, 71 L.Ed. 1049], supra, but whether here the State has delayed the incidence of the tax beyond the step where production and processing have ceased and transmission in interstate commerce has begun. Cf. Utah Power & Light Co. v. Pfost, [286 U.S. 165, 52 S.Ct. 548, 76 L.Ed. 1038] supra. * * * ” [347 U.S. 157, 74 S.Ct. 401.]
*605 We find the Michigan-Wisconsin Pipe Line Company case to be distinguishable from the present controversy.
In the instant case, Plaintiff owned the metering equipment, and title passed to it at the point of entrance to the metering equipment. This, we believe, was the taxable incidence. At that point the gas had not entered into interstate transportation. Since the taking of the gas by the Louisiana-Nevada Transit Company at the metering equipment did not become a part of interstate commerce, plaintiff was the first retainer of the gas, or gathered the gas,[1] and the assessment of the gas gathering tax (LSA-R.S. 47:671) was not violative of the Commerce Clause.
The case of United Fuel Gas Company v. Hallanan, supra, involved a problem of transportation and is, therefore, not apposite.
For the reasons assigned, the judgment of the trial court is reversed and set aside, and it is now ordered that plaintiff’s demands be rejected.
McCALEB, J., concurs in the decree.
SIMON, J., absent.

. LSA-R.S. 47:673:
“ ‘Gathering gas’ means the first taking or the first retaining of possession of gas produced in Louisiana for transmission through a pipe line, after the severance of such gas, and after the passage of such gas through any separator, drip, trap or meter that may be located at or near the well. In the case of gas containing gasoline or liquid hydrocarbons that are removed or extracted in commercial quantities at a plant by scrubbing, absorption, compression, or any similar process, the term ‘gathering gas’ means the first taking or the first retaining of possession of such gas for transmission through a pipe line after such gas has passed through the outlet of such plant, provided that the license or tax hereby levied is not levied against or charged to any royalty interest of any lessor or vendee or assignee of such royalty interest.” (Act No. 11 of 1948)