## WESTERN DISTRIBUTING CO. v. PUBLIC SERVICE COMMISSION OF STATE OF KANSAS et al.
### No. 1391–N.

District Court, D. Kansas, First Division. June 26, 1931, and July 3, 1931.

—.

See, also, 58 F.(2d) 239.

Robert D. Garver, of Kansas City, Mo., and Robert Stone, of Topeka, Kan., for plaintiff.

Earl H. Hatcher, of Topeka, Kan., and S. C. Bloss, of Winfield, Kan., for defendants.

Before PHILLIPS, Circuit Judge, and SYMES and HOPKINS, District Judges.

HOPKINS, District Judge.

The plaintiff seeks to enjoin the defendants from enforcing the rate now on file for gas in the city of Eldorado, or from interfering with plaintiff putting into effect a new rate. The defendants by their answer have challenged the right of plaintiff to secure relief in a court of equity on the ground that such action is premature, contending that plaintiff has failed to exhaust its remedy before the public service commission. The defendants base their contention upon plaintiff's alleged failure to exhaust its remedy before it because of its failure and refusal to produce evidence of the cost of service and rate of return by holding or affiliated companies.

The facts are substantially these: The plaintiff the Western Distributing Company is a Virginia corporation, doing business in the city of Eldorado. Its capital stock is owned by the Gas Service Company, a holding company which also owns stock and operates other public utilities in Kansas, Missouri, and Oklahoma. The capital stock of the Gas Service Company is owned by the Cities Service Company, a corporation holding the capital stock of several hundred public utilities throughout the United States. The capital stock of the Cities Service Gas Company is owned by the Empire Gas & Fuel Company. Henry L. Doherty, doing business as Henry L. Doherty & Co., through agency contracts, manages and controls the operations of all these companies, both in their relations to the public and between themselves. The Gas Service Company above mentioned, operates and manages the plaintiff the Western Distributing Company, and keeps the books of the Western Distributing Company in Kansas City, Mo. The plaintiff the Western Distributing Company procures or buys its supply of natural gas from the Cities Service Gas Company.

It is admitted by the defendant that the plaintiff offered sufficient evidence to make a prima facie case upon all issues before it except for the allowance of three charges, which are specifically mentioned in the findings; these items covering 1¾ per cent. of the gross revenue of the plaintiff, which is paid to Henry L. Doherty & Co., certain expenses paid by the plaintiff to the Gas Service Company, and the principal item of $176,260 paid by plaintiff for gas to its affiliated company the Cities Service Gas Company at the gates of the city. It appears that the plaintiff declined to produce before the commission any evidence showing or tending to show the cost of these items, and from a fair reading of the record I understand that the Gas Service Company, which owns the stock of the plaintiff company, through its officers, and employees, who are also officers and employees of the Gas Service Company, had in its possession and control, books and records and other evidence showing the kind and amount of expenditures of the Gas Service Company, but failed to produce such evidence and also declined to permit the defendant to examine its books.

Under these facts and circumstances, is the plaintiff entitled to the equitable relief which it seeks in this court?

A public service commission such as the defendant is a rate-making body. In order that it may find and establish a legal rate it must have sufficient evidence upon which the same must be based. In my opinion it is the duty of a complaining utility such as the plaintiff to furnish sufficient evidence that the public utilities commission will have a basis upon which to make a reasonable rate. I think the question as to whether a public utility must exhaust its remedy before the commission before applying for judicial or injunctive relief is well settled. The Legislature has within constitutional restrictions the power to place reasonable regulations upon public utilities, and the courts will not interfere with legislative regulation until it has been abused. Nor can the alleged abuse be anticipated. Chicago, Burlington & Quincy R. Co. v. Winnett (C. C. A.) 162 F. 242; Backus-Brooks Co. v. Northern Pacific Ry. Co. (C. C. A.) 21 F.(2d) 4, Syl. 17; Vincennes Water Supply Co. v. Public Service Commission (C. C. A.) 34 F.(2d) 5. Certiorari denied, 280 U. S. 567, 50 S. Ct. 26, 74 L. Ed. 621; Oregon Short Line R. Co. v. Teton Coal Co. (C. C. A.) 35 F.(2d) 919, Syl. 9; Henderson Water Co. v. Corporation Commission, 269 U. S. 278, 46 S. Ct. 112, 70 L. Ed. 273; Lawrence v. St. Louis-San Francisco Railway Co., 274

U. S. 588, 47 S. Ct. 720, 71 L. Ed. 1219; St. Louis-San Francisco Ry. Co. v. Alabama Public Service Commission, 279 U. S. 560, 49 S. Ct. 383, 73 L. Ed. 843; Simpson v. Shepard, 230 U. S. 352, 419, 33 S. Ct. 729, 57 L. Ed. 1511, 1550, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18.

The plaintiff argues that it was not required to produce all of its evidence before the public utilities commission, and strenuously argues that the principles enunciated in Smith v. Illinois Bell Telephone Co., 283 U. S. 808, 51 S. Ct. 646, 75 L. Ed. 1427, do not apply. With this contention I cannot agree. It may be that the affiliated or holding companies, in this case, are making only a fair and reasonable charge for the service rendered by them or the commodity furnished. On the other hand, if the facts are ascertained it might appear that the affiliated or holding companies are being unjustly enriched by charges made on the subsidiary company. If a holding company were permitted to exact from a subsidiary company an excessive charge for service or commodity without a public service commission taking such charges into account in determining the proper rate, it would destroy any attempt of the public service commission at regulation. It is agreed that the matter comes before this court upon a trial de novo, and that the plaintiff may offer here the evidence it declined to offer before the public service commission.

■ We know, of course, that the matter comes before this court as a trial de novo, but such a trial would not give this court an opportunity to make a rate. This court is empowered only to set aside a rate made by a public service commission in a case of this kind, if such rate is unreasonable or confiscatory. The duty of this court is to refuse to grant relief asked by the complaining utility unless it appears that the rate established by the public service commission is unreasonable or confiscatory.

■ A public utility must first exhaust its remedy before the public service commission before seeking injunctive relief against the commission.

■ The cost of services rendered, the cost of commodities furnished, and rate of return earned by a holding or affiliated company is a material issue to be determined in a rate case, and at least a reasonably complete disclosure to the public service commission in respect thereto is necessary to enable findings to be made as to the reasonableness of payments made to an affiliated company for such services or commodities.

■ A public utility has not exhausted its remedy before the public service commission until it has produced evidence upon which findings can be made upon all material issues affecting the rate.

■ It is not proper for a public utility to withhold part of its evidence from the public service commission and first adduce it in federal court in proceedings to enjoin the commission from interfering with the establishment of a new rate.

It is my view, therefore, the Western Distributing Company, having failed to exhaust its remedy before the public service commission, is without standing to ask for relief in the courts and its amended bill of complaint herein should be dismissed.

SYMES, District Judge.

The motion to dismiss should be granted. This is, in effect, an appeal from an order of the state public service commission dismissing plaintiff's application for an increase in gas rates in Eldorado. The record discloses that the plaintiff did not exhaust its remedy before that body, so has no standing here.

The plaintiff, a West Virginia corporation, owns a gas distributing system in the town of Eldorado, Kan., and retails natural gas to local consumers. Its local rates were fixed by an order of the court of industrial relations of Kansas—a body then authorized to establish rates for public utilities—on August 17, 1920. It operated under this order for several years. Becoming dissatisfied, on July 30, 1929, it filed its application for an increase with the defendant commission, making the usual allegations that the rate then in effect was insufficient to produce a fair return; that its property was being taken without due process, etc., and asking the commission to investigate and establish a just and equitable rate.

At the hearing it developed that plaintiff did not produce or manufacture gas, but purchased its supply at the city gate from the Cities Service Gas Company under a day to day verbal contract, at 40 cents per thousand cubic feet—a rate established originally by the public utilities commission of Kansas on March 21, 1923.

It is admitted the common stock of the plaintiff is owned by the Gas Service Company; that the capital stock of the Gas Service Company is owned by the Cities Service Company; and that the Cities Serv-

ice Gas Company collects gas from its fields in Texas and Oklahoma and transports it to other states, including Kansas, selling it to its local distributing companies in said states, including the plaintiff. The common stock of the Cities Service Gas Company is owned by the Empire Gas & Fuel Company, and control of the capital stock of the said Empire Gas & Fuel Company is owned by the Cities Service Company. Furthermore, this corporate set-up is controlled, or at least managed, by Henry L. Doherty & Co. of New York.

The defendant commission in passing upon the application for an increase in the local rate in Eldorado is entitled to, and in fact must, inquire the price that plaintiff pays for its supply at the city gate. This is an important item of plaintiff's cost, and before it is entitled to an increase based on the 40-cent rate, it must justify it like any other item of expense that goes to make up its total cost of doing business.

The commission sought to elicit information and facts concerning the reasonableness of this 40-cent rate.

The plaintiff declined to make any showing as to the cost of gas to the Cities Service Gas Company at Eldorado, or as to the reasonableness of this charge, insisting, however, that the commission allow it as a proper item in fixing its new rate. Whereupon the defendant dismissed the proceeding.

The plaintiff's position is, as I understand it, that this so-called 40-cent rate is not a subject of inquiry by the public service commission of Kansas: First, because this 40-cent rate was in the past approved in certain litigation affecting other towns not including Eldorado; and, secondly, the parent company, Cities Service Gas Company being engaged in interstate commerce, its charges are not subject to regulation by the local commission.

Admittedly, the local body has no control over interstate rates as such. It is to be observed, however, that the parent company is not a party to this proceeding, either here or before the commission, and cannot be affected by any action taken herein. The plaintiff, however, is asking the public service commission to base its local rate on the 40-cent wholesale rate. Therefore the defendant must require it to justify it and determine, as a fact in a proper proceeding, whether it is reasonable under all the conditions of the particular situation presented in Eldorado. To hold that the commission has no control over this item of plaintiff's

rate structure would, in effect, nullify any regulation.

The plaintiff really relies upon the commerce clause of the Federal Constitution (article 1, § 8, cl. 3) in refusing to offer any evidence on this question. It claims that the commerce clause, as stated in Grubb v. Public Utilities Commission, 281 U. S. 470, at page 475, 50 S. Ct. 374, 377, 74 L. Ed. 972, "as in some way operating to commit to the federal courts and to withhold from the state courts jurisdiction of all suits relating to the regulation or attempted regulation of interstate commerce. This view of that clause is quite inadmissible. It has no support in any quarter; is at variance with the actual practice in this class of litigation. [Citing cases.]" Page 476 of 281 U. S., 50 S. Ct. 374, 377: "And is in conflict with the doctrine often sustained by this court that the state and federal courts have concurrent jurisdiction of suits of a civil nature arising under the Constitution and laws of the United States, save in exceptional instances where the jurisdiction has been restricted by Congress to the federal courts."

This statement of the Supreme Court, while not directly in point, is interesting in view of plaintiff's position.

See, also, East Ohio Gas Co. v. Tax Commission of Ohio (May 18, 1931) 283 U. S. 465, 51 S. Ct. 499, 75 L. Ed. 1171.

It is not our duty to prescribe in advance the extent and character of the inquiry that the commission should make in respect to this 40-cent rate. That, in the first instance, is upon the commission. However, the plaintiff must try the issue there, and after it has made a proper showing and the commission has made its findings, then can it appeal to the federal court—if it feels the commission has denied or violated some right, privilege, or immunity guaranteed it by the Federal Constitution.

We may observe in passing—in view of the corporate set-up disclosed—that the relations of these companies are such as to justify a close scrutiny of the whole situation. If it is disclosed that one group or holding company is, through its subsidiaries, collecting gas, transporting it in interstate commerce, and distributing it locally, the question of how many profits may be charged along the route between the gas well and the ultimate consumer may become material.

Furthermore, if plaintiff voluntarily, or under compulsion, pays the 40-cent rate for its gas, irrespective of its reasonableness,

that may be the cause, and not the local rate, for its failure to earn a fair return on its investment.

PHILLIPS, Circuit Judge.

The allegations of the amended complaint, the amended answer, and the evidence introduced present the question: Has plaintiff sufficiently exhausted its administrative remedy to entitle it to seek judicial relief in this proceeding?

On August 17, 1920, the court of industrial relations of Kansas, after a hearing, established domestic gas rates in the city of Eldorado. Such rates have since remained in effect.

On July 30, 1929, plaintiff filed with the public service commission of Kansas, successor to such court of industrial relations, an application to set aside such rates and to establish new rates, in which it alleged that the rates fixed in such order of August 17, 1920, were insufficient to produce a fair and adequate return on the fair value of its property used and useful in the services rendered by it in the city of Eldorado; and that the rates fixed in such order were unreasonable, unjust, and confiscatory, and resulted in the taking of plaintiff's property without due process of law.

During the course of the hearing the commission requested plaintiff to furnish evidence relative to the reasonableness of the forty-cent gate rate which plaintiff paid to the Cities Service Gas Company for the gas which plaintiff distributed and sold in the city of Eldorado, and the charges paid by plaintiff to Henry L. Doherty & Company and the Gas Service Company for services rendered by such companies to plaintiff. Plaintiff offered no evidence before the commission as to the reasonableness of such items of cost, except the judgment and records in the two rate cases referred to in plaintiff's amended bill. The commission dismissed the application on account of the failure of plaintiff to produce satisfactory evidence upon such items of cost.

While I am not as certain on this point as my associates, Judge SYMES and Judge HOPKINS, I am inclined to agree with them that there was not a sufficient showing before the commission with respect to the reasonableness of the amount paid for gas at the city gate, and the amounts paid for services to Henry L. Doherty & Company and the Gas Service Company to warrant the conclusion that plaintiff exhausted its administrative remedy before the commission.

The stock of plaintiff is owned by the Gas Service Company. The Cities Service Company owns the stock of the Gas Service Company. The stock of the Cities Service Gas Company is owned by the Empire Gas & Fuel Company. The stock of the latter company is owned by the Cities Service Company. Henry L. Doherty & Company through agency contracts manages and controls the operation of all these interrelated and affiliated companies. Counsel for plaintiff contend that, if the position of the commission be sustained, it will result in the commission indirectly fixing interstate rates.

The Cities Service Gas Company transports gas by means of pipe lines from gas fields located outside of the state of Kansas to the city gate at Eldorado, and is engaged in interstate commerce. It has been settled by repeated decisions of the Supreme Court that the commission has no power to fix and regulate interstate gas rates. State of Missouri ex rel. Barrett v. Kansas Gas Co., 265 U. S. 298, 44 S. Ct. 544, 68 L. Ed. 1027; People's Natural Gas Co. v. Public Service Comm., 270 U. S. 550, 46 S. Ct. 371, 70 L. Ed. 726; Public Utilities Comm. v. Attleboro S. & E. Co., 273 U. S. 83, 47 S. Ct. 294, 71 L. Ed. 549.

It cannot be questioned that the forty-cent rate at the city gate is an interstate rate which the commission cannot directly regulate. It does not follow, however, that the commission may not inquire into the reasonableness of that rate for the purpose of fixing the local rates which plaintiff may charge in the city of Eldorado. Smith v. Illinois Bell Tel. Co., 282 U. S. 133, 51 S. Ct. 65, 75 L. Ed. 255; Houston v. Southwestern Bell Tel. Co., 259 U. S. 318, 42 S. Ct. 486, 66 L. Ed. 961; State of Missouri ex rel. Southwestern Bell Tel. Co. v. Pub. Serv. Comm., 262 U. S. 276, 43 S. Ct. 544, 67 L. Ed. 981, 31 A. L. R. 807. It is my opinion that the commission, in making inquiry into the city gate rate, should not approach that question as it would were it empowered to fix such rate. The inquiry should be for the purpose of determining whether the contract between plaintiff and the Cities Service Gas Company, an affiliated corporation, is fair and reasonable, and such as prudent business men, dealing at arms' length and acting in good faith, in the exercise of a sound discretion would have entered into under similar circumstances. To put it another way: The commission may not fix an interstate rate, but it may determine whether a corporation buying gas from a related and affiliated corporation is paying such affiliated

corporation an unfair and fictitious charge, under the existing circumstances, for gas at the city gate, and using that charge as one of the elements of cost upon which it seeks to have the local rate fixed. The commission may make inquiry into value of property, costs, profits, limitation on source of supply, and other pertinent factors in determining whether, under the existing circumstances, the contract is fair and reasonable and was made in good faith; but it may not go to the extent of fixing and determining the rate at the city gate.

The motion to dismiss contained in the answer is sustained. Counsel may prepare and submit to the court findings of fact and conclusions of law in compliance with this ruling.